**78 So.2d 170**

**Emile LUDEAU et al.**

**v.**

**CONTINENTAL OIL COMPANY.**

**No. 41593.**

Jan. 10, 1955.

Rehearing Denied Feb. 14, 1955.

———◆———

Atlee P. Steckler, New Orleans, Jack C. Fruge, Ville Platte, Joseph A. Loret, Baton Rouge, of counsel, for plaintiffs-appellants.

Ward T. Jones, Houston, Tex., Liskow & Lewis, Lake Charles, for defendant-appellee.

McCALEB, Justice.

Plaintiffs are appealing from the dismissal of their suit for $372,000 damages, which they allegedly sustained as a result of the failure of defendant, Continental Oil Company, to obtain production from an oil well drilled in the Ville Platte oil field area during 1939, it being averred that it deliberately and fraudulently abandoned the well in order to deprive plaintiffs of their interest therein. The action, which was instituted in 1947, is founded on three contracts between Emile Ludeau, W. A. Jacobson and others [1] and defendant, pertaining to the development by the latter of a large acreage in the Ville Platte Oil Field.

In the original contract, which is dated January 1, 1936, plaintiffs assigned to the oil company a block of mineral leases or options approximating 5,690 acres in Townships 3 and 4 South, Range 2 E., Louisiana Meridian, Evangeline Parish, reserving to themselves, however, for a period not exceeding one year, a 15-acre tract belonging to J. E. Vidrine, upon which they were then drilling a well. On November 4, 1936, plaintiffs' drilling rights were extended to

March, 1938, by mutual agreement. On December 14, 1937, a third contract was concluded by which defendant transferred to plaintiffs five acres held by it under another lease, to be combined with the Vidrine 15-acre tract and, in consideration thereof, plaintiffs gave defendant an option to drill an oil well on this 20-acre tract, provided that said option were exercised within 90 days of the completion of a nearby well being drilled by defendant on land designated as the Louisiana Central tract. It was stipulated that, in the event defendant exercised the option and obtained production from the well drilled by it, plaintiffs would be entitled to one-half of $7/8$ths of its value after deducting the costs of drilling and equipping the well and the expense of operating it following completion.[2]

Defendant exercised its option within the period specified in the contract and, during March of 1938, drilled a well to a depth of 10,506 feet. This operation was abandoned as unsuccessful in June, 1938. However, upon discovery of a new sand in another well a mile away, defendant renewed its efforts to secure production from the well and, by a sidetrack operation, explorations were conducted to a depth of 10,456 feet, all without avail. Over $200,000 was ex-

1. These individuals or their successors are grouped as plaintiffs in the case.

2. This agreement further provided that, if defendant failed to exercise the option, plaintiffs would have the right to drill on the 20-acre tract, but exercise of this privilege was limited to a period of one year following which the drilling rights would revert to defendant.

pended by defendant in these drilling operations.

Plaintiffs' cause of action is, as aforesaid, predicated upon their charge that defendant deliberately failed to obtain production so as to avoid sharing with them the working interest in the well [3] and they also contend that, aside from fraud, defendant is liable for damages because it would have obtained production from the well by the exercise of due diligence in its operations, it being shown that there are 200 producing wells within a radius of 2 miles of the tract in question.

At the trial of the case considerable technical testimony was given as to the manner in which the drilling operations were pursued. It is plaintiffs' position that this evidence, particularly that of geologist Dr. John Huner, Jr., an expert produced by them, sustained the charges of their petition.

The district judge stated in his written opinion, in which he reviewed the evidence, that he was especially impressed with the testimony of defendant's geologist, Mr. Fred Bates, and that "there is nothing in the testimony and the documentary evidence in the record to support a charge of bad faith and certainly not of fraud".

■ The record in the case fully justifies the ruling of the trial judge with re-

spect to the charges of fraud and deceit. In addition, it exhibits that plaintiffs have fallen far short of establishing their claim that defendant did not exercise due diligence in its drilling efforts. At the outset, it is well to note that the contract sued on did not obligate defendant, if it exercised the option, to obtain production from the well it would drill on the 20 acres of land. The agreement merely contemplated that defendant would employ the resources at its command in a sincere effort to secure production and, according to the overwhelming evidence, it appears that this was done at great expense. In considering the operations of defendant, it is to be borne in mind that they took place in 1938 and 1939 and, hence, should be judged in the light of practices prevalent at that time. The trial judge took this factor into account, and correctly so, because technical knowledge in the discovery and production of oil has undoubtedly increased during the past 10 or 15 years. The evidence reveals that the drilling operation was carried on with usual and conventional equipment; that the well was drilled in the same manner as other wells in the field and conformably with good oil field practices and that there were other wells drilled in the area which did not prove to be productive. There was also testimony to the effect that the various sands which were encountered but not tested did not, in the opinion

3. It is said that defendant is extracting the minerals from under this 20-acre tract by means of other nearby wells. The ■

spacing orders of the Department of Conservation provide for one well to drain each 20 acres in the field.

of the geologist in charge, exhibit sufficient promise of being producing sands.

The most that can be said for plaintiffs' evidence is that their witnesses established that there was a likelihood that a producing oil well could have been brought in somewhere on the 20-acre tract and this is probably so since there are 200 producing wells within a radius of 2 miles of the tract in question. But these opinions, which are voiced more than 10 years after the drilling operations, are hindsight observations which do not detract from the satisfactory explanation given by defendant's witnesses that various geological factors prevented the well from being successful. Moreover, it can hardly be gainsaid that speculation and uncertainty are inherent in all drilling operations.

The judgment is affirmed.